UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 2:22-CR-85 |
| ) | |
| HAMIDULLAH TRIBBLE, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

After leading police on a dangerous and at times high speed chase, Hamidullah Tribble was forced to the side of the road by the police which ultimately led to the recovery of a firearm in his car. As a convicted felon, Tribble was prohibited from possessing the gun. He was later found guilty at a trial of one count of being a felon in possession of a firearm. He now seeks a judgment of acquittal or a new trial. [DE 227]. The evidence against Tribble was overwhelming and there was no error at his trial. As a result, there is no basis to grant Tribble a judgment of acquittal or a new trial. His motion will therefore be DENIED.

**Background**

This case has a somewhat tortured procedural history. After blowing through three lawyers appointed under the Criminal Justice Act, Tribble eventually retained a private attorney to represent him. There were two trials, the first ending in a mistrial [DE 148] and the second resulting in a conviction [DE 209]. Tribble's first trial

commenced on January 16, 2024. [DE 148]. It did not last long. Things went awry when the government presented its first witness, Lake County Sheriff's Deputy TaRonda Faison. During Officer Faison's testimony, it came to light that she had a pertinent dash camera video of the chase and subsequent arrest of Tribble on her cell phone that she never disclosed and that was never produced to the defense prior to trial. According to the Assistant United States Attorney prosecuting the case (AUSA Sheehan), this was a total surprise; he told the court that Faison was asked at pretrial meetings whether she was aware of any dashcam videos, and she told him no. Two other officers were present during that pretrial meeting. After the kerfuffle with Faison over the undisclosed video, the defense moved for a mistrial, which I granted.

Following the mistrial, Tribble attempted to have the case dismissed with prejudice which I denied in a comprehensive opinion. [DE 157; DE 183]. Without getting too far into the weeds (that opinion of course speaks for itself), I found that there was no evidence that the government acted in bad faith in refusing to produce the dashcam video and there was no evidence that they goaded Tribble into asking for a mistrial. Therefore, a retrial did not raise Double Jeopardy concerns. However, because it would be unfair to allow the government to use the late produced videos to strengthen its case on retrial, as a sanction, I prohibited the government from introducing the evidence it failed to turn over during retrial. [DE 183 at 24]. Of course, Tribble was free to offer it if he thought it would be helpful to his case. [DE 183 at 24].

2

Prior to the second trial, Tribble subpoenaed AUSA Sheehan to testify about the pretrial preparation meetings with Faison. His testimony was potentially relevant to prove up an impeachment of Officer Faison. Recall that AUSA Sheehan previously advised the court that Faison had denied knowledge of the dashcam video in their pretrial meeting. If she were to testify at the second trial that she never denied the existence of the dashcam video at their pretrial meeting, then AUSA Sheehan was a potential witness to prove up a prior inconsistent statement of Faison. The government moved to quash the subpoena. [DE 180]. They told me that because there were two other officers present at the pretrial meeting, those other officers were better witnesses for proving up the impeachment than Sheehan was.

Prior to the start of Tribble's second trial, I held a hearing on the motion to quash the subpoena. [DE 204]. After the hearing, I reserved ruling on the government's motion to quash the Sheehan subpoena; I decided I couldn't determine whether Sheehan was a necessary witness until after Faison testified. [*Id*.] I also wanted to hear from the other two officers who were present during the pretrial meetings with Faison. In a subsequent hearing neither officer had any recollection of the Faison pretrial meeting. That left AUSA Sheehan as the only witness to prove up the potential impeachment of Officer Faison.

Tribble's second trial commenced on May 21, 2024. [DE 205]. During Tribble's second jury trial, I denied the government's motion to quash the subpoena directed to AUSA Sheehan and allowed Tribble to call Sheehan as a witness to prove up

3

impeachment of Officer Faison. [DE 220 at 448].[1] Faison testified that she did not recall denying the existence of the cell phone video during her pretrial meeting with AUSA Sheehan. I therefore allowed the defense to call AUSA Sheehan to testify to what Faison said at their pretrial meeting. The jury later returned a verdict of guilty as to Count 1. [DE 212].

Tribble has now moved for a judgment of acquittal or a new trial. Tribble cites prosecutorial misconduct during both trials and my handling of his motion for a mistrial as the basis for his request for a judgment of acquittal or a new trial. As explained below, Tribble has failed to demonstrate that he is entitled to a judgment of acquittal, or a new trial. His motion is therefore denied.

## Discussion

Tribble raises a number of issues. First, Tribble states that I mishandled his request for a mistrial during his first trial by granting him the mistrial without confirming whether he'd prefer to proceed if I reserved ruling on the issue of prejudice. [DE 227 at 10]. Second, Tribble argues that government misconduct and misrepresentations deprived him of a fair trial. [*Id*. at 11] Finally, Tribble states that he was deprived of a fair trial due to cumulative evidentiary errors which took place during his second trial. [*Id*. at 14]. I will first lay out the applicable legal standards before turning to each argument below.

---

[1] DE 220 is the full transcript of day two of Tribble's second jury trial held on 05/22/2024. The page number pin cites to this document refer to the page of the transcript in the upper right-hand corner of the page.

4

I.      **Legal Standards for Rule 29 and Rule 33**

Under Federal Rule of Criminal Procedure 29, a criminal defendant may request an acquittal "[a]fter the government closes its evidence or after the close of all evidence ... of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Relief is available under Rule 29 only if the evidence, viewed in the light most favorable to the government, would not justify a rational trier of fact in finding the elements of the crime charged beyond a reasonable doubt. *United States v. Boros*, 636 F. App'x 688, 692 (7th Cir. 2016). As I've explained previously, "[c]hallenges to the sufficiency of the evidence become more difficult after a jury verdict because the jury found the evidence sufficient." *United States v. Gould*, 2021 WL 1851651, at *2 (N.D. Ind. May 10, 2021). *See also*, *United States v. Elizondo*, 21 F.4th 453, 470 (7th Cir. 2021) (explaining that a defendant challenging a jury verdict under Rule 29 "faces a nearly insurmountable hurdle").

Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Under Rule 33 the question is whether "the verdict is so contrary to the weight of evidence that a new trial is required in the interests of justice." *United States v. Chambers*, 642 F.3d 588, 592 (7th Cir. 2011). Unlike a Rule 29 motion, when considering a Rule 33 motion I am not required to view the evidence in a light most favorable to the Government. *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999). However, a jury verdict in a criminal case should not be overturned lightly and I decide Rule 33

5

motions with this in mind. *See also*, *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005) (explaining that the Seventh Circuit approaches Rule 33 motions with "great caution wary of second-guessing the determinations of both judge and jury"); *United States v. Hagler*, 700 F.3d 1091, 1101 (7th Cir. 2012) (stating that Rule 33 is "reserved for only the most extreme cases").

## II.   Defendant's Motion for a Mistrial

Tribble first argues that it was a mistake for me to grant his motion for a mistrial without first committing to whether I would allow a retrial. Tribble states that he "clearly requested that the Court grant a mistrial with prejudice because of the government's misconduct." [DE 227 at 10]. He goes on to note that I "granted the mistrial and released the jury without first determining whether Mr. Tribble wanted to continue if the Court reserved ruling on the issue of prejudice." [*Id.*] During the first trial, I informed Tribble that I would grant his request for a mistrial but would reserve ruling on whether the mistrial would be granted with prejudice until the parties had an opportunity to brief the issue. [DE 150 at 65].[2] Before dismissing the jury, I again confirmed with Tribble and the government that they had no objections to the mistrial and the jury being dismissed. Our discussion on the record proceeded as follows:

> Mr. Bedi: Judge, do we need to release the jury?
> The Court: I'm simply going to go in and tell them a mistrial has been granted. Does anybody object to that?
> Mr. Bedi: No.
> Mr. Sheehan: No, Your Honor.

---

[2] DE 150 is the full transcript of Tribble's first jury trial held on 01/16/2024.

6

[*Id*. at 68].

Tribble cannot now complain that he did not consent to the mistrial when (1) he was the one who requested the mistrial; (2) he knew that the issue of whether it would be with or without prejudice would be decided later; (3) he had ample opportunity to object; and (4) he failed to object. *See e.g.*, *United States v. Buljubasic*, 808 F.2d 1260, 1265 (7th Cir. 1987) (due to defendant's silence when the judge stated she was granting a mistrial the court "was entitled to treat [the mistrial] as a consensual mistrial"); *Camden v. Cir. Ct. of Second Jud. Cir., Crawford Cnty., Ill.*, 892 F.2d 610, 614 (7th Cir. 1989) ("[a]n implied consent to a mistrial has the same effect as an express consent and vitiates any double jeopardy bar to retrial"). The fact is, I granted *Tribble's request* for a mistrial and, absent any objection on his part, he consented to the mistrial.

What's more, as explained in my previous opinion, retrial was proper as there was no indication or allegation that the government's conduct related to the undisclosed videos was *intended* to cause Mr. Tribble to move for a mistrial. In *Oregon v. Kennedy*, 456 U.S. 667 (1982) the Supreme Court held that where a defendant in a criminal trial successfully moves for a mistrial, double jeopardy bars a second trial "only if the conduct giving rise to the successful motion for a mistrial was prosecutorial or judicial conduct *intended* to provoke the defendant into moving for a mistrial." *Oregon*, 456 U.S. at 667. *See also*, *Tompkins v. Sevier*, 2021 WL 2160060, at *5 (S.D. Ind. May 26, 2021) ("[w]hen a defendant successfully moves for a mistrial, the State is permitted to retry the defendant provided that the cause of the mistrial was not the

7

prosecutor attempting to goad the defendant into moving for a mistrial); *United States v. Cornelius*, 623 F.3d 486, 497 (7th Cir. 2010) (explaining that if the government intended to provoke the defendant into moving for a mistrial double jeopardy bars retrial); *United States v. Doyle*, 121 F.3d 1078, 1084 (7th Cir. 1997) (same).

There was no indication that the government engaged in conduct intended to cause a mistrial. Indeed, Tribble has never even alleged that the government intended to cause a mistrial. When it came to light that there was dash camera footage from Officer Faison's dash camera and that Faison had recorded it on her phone the prosecution stated "[t]he government is just as surprised as the Court and counsel. I'm at a loss." [DE 150 at 65]. I have no reason to doubt that, and Tribble has made no effort to show that the government did all of this with an eye towards causing him to move for a mistrial. In fact, any such claim seems far-fetched; the trial had just begun! What would be the point? In sum, because there is not so much as a whiff of evidence that the government was trying to goad Tribble into asking for a mistrial, double jeopardy did not bar retrial.

### III. Government Misconduct

Tribble also claims that government misconduct is a reason that I should dismiss the indictment. [DE 227 at 11]. Tribble makes mention of the government's misrepresentations and discovery violations from the first trial including misrepresenting that Faison's body-worn camera was the only police video, and the prosecution's statements that Faison did not testify deceptively about her dash cam. [*Id.*

8

at 12-13]. I agree with Tribble that not being provided all of the available videos of the circumstances leading to Tribble's arrest could deprive him of a fair trial. And this is precisely the reason I granted a mistrial during Tribble's first trial. "[A] mistrial is appropriate when an event during trial has a real likelihood of preventing a jury from evaluating the evidence fairly and accurately, so that the defendant has been deprived of a fair trial." *United States v. Long*, 748 F.3d 322, 327 (7th Cir. 2014) (quoting *United States v. Collins*, 604 F.3d 481, 489 (7th Cir. 2010)). I also precluded the government from introducing the previously withheld videos during retrial. [DE 183 at 24]. In short, Tribble has already received the appropriate remedy for the prosecution's errors from the first trial.

Tribble also mentions government misconduct from the second trial as a reason I should dismiss the indictment. [DE 227 at 13]. Tribble states that "Sheehan and Schultz (the AUSA who prosecuted the second trial) misrepresented to the Court that Randle could act as an impeachment against Faison… [h]owever, Schultz and Sheehan knew that Randle, Ratkovich, Kocinski would not agree with Sheehan's claim that he asked Faison about her dashcam during their pretrial meetings." [*Id.*] This misconduct was addressed at Tribble's second trial. Tribble was allowed to cross-examine Faison and to take the extraordinary step of calling AUSA Sheehan to perfect the impeachment of Faison. *See*, *United States v. Johnston*, 690 F.2d 638, 644 (7th Cir. 1982) (explaining that allowing testimony from the prosecution is permitted in "extraordinary circumstances

9

and for compelling reasons"). I'm frankly at a loss at what more I could have done to protect Tribble's rights at his second trial.

Tribble analogizes this case to the Ninth Circuit case *United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008). [DE 227 at 11-13]. This analogy misses the mark. In *Chapman*, the district court dismissed an indictment after the prosecution failed to turn over more than 650 pages of documents to the defense. *Chapman*, 524 F.3d at 1077. In contrast, the prosecution in this case failed to identify a handful of video recordings. Moreover, in *Chapman* the court determined that the prosecution acted "flagrantly, willfully, and in bad faith." *Id*. at 1080. I have made no such determination here. In this case, the government repeatedly told me that during pretrial meetings with Faison and other responding officers, the officers stated that the vehicles were not equipped with video or audio recording devices. There is no evidence that the government knew that Faison had recorded the dashcam video on her phone, or that the underlying dashcam video even existed, until Faison admitted to making the phone recording during a recess following her cross examination in the first trial.

Tribble filed a memorandum with notes from a meeting that took place between Faison, ATF Agent Kocinski, AUSA Sheehan, and defense counsel during a break in the first trial. [DE 157-1 at 2–3]. The notes from this meeting show that Faison told defense counsel that she did not admit to having a recording of the video on her phone during cross-examination because she was "not supposed to have a copy of this on [her] personal cell phone because it was against the policies and procedures and [she] didn't

10

want to get in trouble." [*Id*. at 2]. If anything, this tends to show that the prosecution's actions in failing to turn over the additional videos in this case did not reach the level of "flagrantly, willfully, and in bad faith" discussed in *Chapman*.

## IV. Admission of Faison's Body Camera Footage

Next, Tribble contends that it was error to allow Officer Ratkovich to authenticate Officer Faison's body worn camera. [DE 227 at 14]. To authenticate a piece of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The Seventh Circuit has held that "the government can authenticate a recording 'by offering testimony of an eyewitness that the recording accurately reflects' the events as they occurred." *United States v. Brewer*, 915 F.3d 408, 417 (7th Cir. 2019) (quoting *United States v. Eberhart*, 467 F.3d 659, 667 (7th Cir. 2006)). *See also, United States v. Cejas*, 761 F.3d 717, 723-24 (7th Cir. 2014) (explaining that the government laid a proper foundation to authenticate a video recording where the video recording was authenticated through corroborating eyewitness testimony). Officer Ratkovich testified that he pursued Tribble and was at the scene of the crime with Officer Ferguson (using Faison's maiden name) and other officers when Tribble was finally stopped and arrested. [DE 219 at 282-303].[3] Ratkovich also testified that Officer Ferguson (Faison) had a body camera, that he recognized her voice on the recording, that he recognized his voice on the recording, and that the video

---

[3] DE 219 is the full transcript of day one of Tribble's second jury trial held on 05/21/2024.

11

recording was an accurate depiction of his encounter with Mr. Tribble. [*Id*. at 303-305]. Although Officer Faison could have properly authenticated the footage from her body camera, she wasn't the only one who could do it. "[T]he prosecution is entitled to prove its case by evidence of its own choice…" *Hill v. Wilson*, 519 F.3d 366, 369 (7th Cir. 2008) (quoting *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997)). *See also*, *O'Brien v. United States*, 2023 WL 2572542, at *10 (N.D. Ill. Mar. 20, 2023) ("[t]he government is not obligated to call a witness and may present its case in whatever way and with whatever evidence it desires"). Officer Ratkovich was there on the scene and the law is clear that, as an eyewitness to the events caught on camera, it was not improper for him to authenticate the video evidence.

## V. Length of the Body Camera Footage from High-Speed Chase

Tribble also argues that I erred in allowing the Government to play "nearly five minutes of hearsay statements from Faison's body-worn camera" under the excited utterance exception to the rule against hearsay. [DE 227 at 15]. The Seventh Circuit has stated three principal criteria for the admission of statements as excited utterances under Federal Rule of Evidence 803(2). *United States v. Boyce*, 742 F.3d 792, 798 (7th Cir. 2014). These three criteria are: "(1) a startling event occurred; (2) the declarant makes the statement under the stress of the excitement caused by the startling event; and (3) the declarant's statement relates to the startling event." *Id*. (quoting *United States v. Joy*, 192 F.3d 761, 766 (7th Cir. 1999)). Here, the startling event of a high-speed chase on the highway occurred. The video begins with Officer Faison running to a vehicle

surrounded by other officers with their guns drawn. Govt's Ex. 1, at 00:00-00:16. Faison then draws her weapon and screams "Hands! Let me see your f---ing hands!" *Id*. at 00:14-00:28. The police then smash the passenger side window before unlocking the vehicle and forcibly removing Tribble. *Id*. at 00:30-01:20.

Tribble principally takes issue with the length of time the video was allowed to play. Tribble argues that "[i]t was error to allow the entirety of Faison's body-worn camera to be admitted under the excited utterance exception." [DE 227 at 16]. However, even once Tribble was apprehended the officers were still under the stress of the excitement caused by the chase. More than eight minutes into the nine-minute video officers were still discussing how startled they were from the chase. One officer, while speaking quickly, in incomplete sentences, and stuttering, describes what sounds to be a near accident during the chase. "I- I- I rubbed it. I f---ing rubbed it dude. I ran across the -- One car I barely made it and the other one I rubbed against the wall. He hit one of the cars up here." *Id*. at 08:15-08:30. Although the officers can process what's going on their statements are still excited utterances. "Courts need not make a specific finding that the declarant was entirely incapable of deliberative thought at the time. "*Martinez v. McCaughtry*, 951 F.2d 130, 135 (7th Cir. 1991). "All that the exception requires is that the statement be made contemporaneously with the excitement resulting from the event." *Id*. (quoting *Smith v. Fairman*, 862 F.2d 630, 636 (7th Cir. 1988)). These statements took place on the highway just minutes after the officers ended the high-speed chase and forcibly removed Tribble from his vehicle. The officers were still excited by the

13

high-speed chase and allowing the statements to be played as excited utterances under Rule 803(2) was proper.

## VI. Limiting the Cross Examination of Ratkovich

Tribble also takes issue with the fact that I sustained an objection to a question asked during Officer Ratkovich's cross examination. [DE 227 at 17-18]. Tribble argues that preventing the question was error because the question "went to the heart of Mr. Tribble's police conspiracy defense." [*Id*. at 17]. Tribble's counsel asked the question twice and I sustained the same objection twice. The line of questioning concerned the officers' preparation meetings with the prosecution. The relevant dialogue was as follows:

> Q. And in those four meetings, you talked about what happened correct?
> A. Yes.
> Q. The other officers talked about what happened, correct?
> A. As far as the facts of the case, correct.
> Q. Correct. So that was so you would all be on the same page, correct?

[DE 220 at 327].

At this point, the prosecution objected to the question stating that the question called for speculation. I sustained the objection and added that the question was argumentative. [*Id*.] Defense counsel continued his questioning before again returning to the same question.

> Q. And there were also trial meetings, correct, trial prep meetings?
> A. Correct.
> Q. That was so you would all prepare for trial.
> A. Correct.
> Q. So that you would all be on the same page when you testified at trial?

14

[*Id.*]

The prosecution again objected based on the question calling for speculation stating "[i]t's the same objection" and I, again, sustained the objection. [*Id.* at 327-28]. It is proper for me to use my discretion to limit cross examination where I see fit. *United States v. Jones*, 889 F.3d 876, 879 (7th Cir. 2018) ("[a] district court is afforded broad discretion to permit or exclude cross-examination"); *United States v. Robbins*, 197 F.3d 829, 844 (7th Cir. 1999) ("the trial judge retains broad discretion in limiting the extent and scope of cross-examination…[t]his is true even when the defendant is attempting to show interest, bias or motive").

This specific question called for Officer Ratkovich to speculate as to why the other officers involved in the matter attended pretrial meetings and discussions with the prosecution. There was no evidence introduced up to that point which could show that this question called for anything other than speculation and conjecture. There was no evidence tending to show the officers attended meetings and discussions with prosecutors so that they could "get on the same page." Any answer from Ratkovich as to why the other officers attended the pretrial meetings and discussions would have been improper speculation. While a defendant needs to be given latitude to conduct cross examination, "[i]t is well established that purely conjectural or speculative cross-examination is neither reasonable nor appropriate." *Searcy v. Jaimet*, 332 F.3d 1081, 1088 (7th Cir. 2003).

15

Tribble follows up his assertion that sustaining the objection was inappropriate by stating "[m]oreover, on a common sense level, pretrial meetings are of course meant to get everyone on the same page." [DE 227 at 18]. Tribble makes an important point. In this instance it was entirely appropriate for me to prevent allowing Ratkovich to speculate as to whether the officers attended pretrial meetings to "get on the same page" when the jury could make that inference if they saw fit. "Indeed, juries are allowed to draw upon their own experience in life as well as their common sense in reaching their verdict." *United States v. Magana*, 118 F.3d 1173, 1201 (7th Cir. 1997) (quoting *United States v. Briscoe*, 896 F.2d 1476, 1506 (7th Cir. 1990)). *See also*, *United States v. Henningsen*, 387 F.3d 585, 590 (7th Cir. 2004) (explaining that the jury is entitled to assess the credibility of witness testimony and draw inferences from the rest of the evidence).

Finally, even if there was some error on my part in sustaining the objection, it falls far short of depriving Tribble of a fair trial. *Robbins*, 197 F.3d at 844 (explaining that a trial violates the Sixth Amendment's confrontation clause only where "it has so abused its discretion as to prevent the jury from making a discriminating appraisal of the witness' testimony"); *Jones*, 889 F.3d at 880 (explaining that where a district judge limits cross examination reversal is appropriate only if no reasonable judge would make the same decision).

## Conclusion

After considering each of the arguments presented, I find no reason to grant Tribble an acquittal or a new trial in this matter.

**ACCORDINGLY:**

Defendant Hamidullah Tribble's Motion for a Judgment of Acquittal or New Trial Pursuant to Federal Rules of Criminal Procedure 29 and 33 [DE 227] is **DENIED**.

**SO ORDERED**.

ENTERED: November 13, 2024.

      /s/ Philip P. Simon
      PHILIP P. SIMON, JUDGE
      UNITED STATES DISTRICT COURT